**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **KIMBERLY PARKER,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **HENRY M. PAULSON, JR.,** | ) | |
| **SECRETARY** | ) | |
| **U.S. DEPARTMENT OF THE TREASURY** | ) | |
| **1500 Pennsylvania Avenue, N.W.** | ) | |
| **Washington, D.C. 20220,** | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **PRESTON MOORE,** | ) | |
| **U.S. DEPARTMENT OF THE TREASURY** | ) | |
| **BUREAU OF ENGRAVING AND PRINTING** | ) | |
| **14th & C Streets, S.W.** | ) | |
| **Washington, DC 20228,** | ) | |
| | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| | ) | |
| | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.    INTRODUCTION**

1.    Plaintiff Kimberly Parker (hereinafter "Plaintiff" or "Ms. Parker"), by and through undersigned counsel, brings this action for declaratory judgment, equitable relief and money damages to secure the protection and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. §§ 2000(e) *et seq.*, as amended (hereafter "Title VII"), the D.C. Human Rights Act, D.C. Code §2-1401.01, *et seq* ("Human Rights Act"), and common law claims which provide relief for intentional infliction of emotional distress and negligent hiring and retention against Defendants

Preston Moore and the Department of the Treasury (hereafter "Treasury" or "the Agency"). Plaintiff requests a jury trial on each of these counts.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over Ms. Parker's claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(f)(3), the D.C. Human Rights Act, and 28 U.S.C. §§1331, 1343(4), and 1367.

3.    Venue is appropriate based on the facts that the claims asserted herein arose in the District of Columbia, that Defendant Agency's headquarters is located in the District of Columbia, and that most of the documents and records pertaining to this action are located in the District of Columbia.  The Court has jurisdiction over the State claims based on supplemental jurisdiction.

## III.    JURY TRIAL DEMANDED

4.    Plaintiff requests a jury trial on all issues.

## IV.    PARTIES

### A.    Plaintiff Kimberly Parker

5.    Plaintiff is a female citizen of the United States who resides in Forestville, Maryland.  Ms. Parker was employed by the Agency from February 2001 until on or about May 24, 2005.

### B.    Defendant Henry M. Paulson, Jr.

6.    Defendant is the Secretary of the Treasury.  Defendant Paulson is being sued in his official capacity as provided by law based on his executive responsibility for administering Agency personnel policies to ensure a working environment that is in compliance with state and federal law.  During the relevant time period, Treasury employed well-over 10,000 employees.

The Agency's headquarters are located at 1500 Pennsylvania Avenue, N.W., Washington, D.C. 20220.

### C.     Defendant Preston Moore

7.      Beginning in approximately January 2002, Defendant Moore was Plaintiff's second-line supervisor at the Agency.  He remained Plaintiff's supervisor for the majority of her time there.  During the relevant time period, Defendant Moore worked at the Agency's Bureau of Engraving and Printing office in Washington, D.C.

## V.     ADMINISTRATIVE EXHAUSTION

8.      Plaintiff has satisfied all administrative prerequisites for filing suit under Title VII.  After Ms. Parker received her Right to File a Formal Complaint Letter on October 5, 2004, she timely filed a Complaint of Discrimination (Treasury Department Case No. 05-2019M) with the Agency's EEO office ("EEO") on October 7, 2004, alleging claims of gender discrimination and sexual harassment.  On May 24, 2005, Plaintiff notified the EEO of her constructive discharge.  On April 11, 2006, the EEO notified Plaintiff in writing that her constructive discharge claim would be added to her complaint.

9.      In April 2005, the EEO requested to extend its investigation of Plaintiff's complaint.  In October 2006, the EEO issued Plaintiff a Supplemental Investigative file and advised Plaintiff that she did not need a Right to Sue to initiate an action in federal court, as more than 120 days have passed since the filing of her October 7, 2004 EEO complaint.

## VI.     STATEMENT OF FACTS AND CLAIMS

10.      Plaintiff restates and re-alleges the allegations of the Complaint set forth in paragraphs 1 through 9 above.

11.    Plaintiff was hired by Defendant's Bureau of Engraving & Printing (hereinafter "BEP"), Police Services Division, Office of Security as a police officer on or about February 12, 2001.  In approximately July of 2001, Plaintiff was promoted to Private.  Plaintiff was promoted to Corporal in 2003.  Plaintiff was employed by Defendant until her constructive discharge on March 24, 2005.

12.    Plaintiff was a salaried employee with benefits.

13.    Ms. Parker received a summary rating of "exceeded standards" in her 2002, 2003, and 2004 annual Employee Performance Appraisals.

14.    Plaintiff's chain of command at the BEP Police Department was as follows: Officer, Corporal, Sergeant, Lieutenant, Captain, Commander, Chief of Police.  From the time Plaintiff began her employment with the Agency in 2001 until her constructive discharge in May 2005, all BEP corporals were male; all BEP Lieutenants were male; all BEP Captains were male; and all Police Chiefs were male.  With the exception of one female commander who left the Agency at the end of 2002, all BEP Commanders were male.

15.    When Plaintiff worked the night shift at BEP, she was the only female officer on duty.

16.    Beginning in approximately January 2002, Lieutenant Preston Moore ("Defendant Moore") became Ms. Parker's second-line supervisor.  In this capacity, Defendant Moore's duties included overseeing the assignment of officers to shifts and posts, administering disciplinary action, and adjudicating leave requests.

## SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

17.     On Plaintiff's first day of employment with the Agency in February of 2001, a male officer informed her that he had overheard male supervisors discussing which of them would get to "screw" Plaintiff and another new female officer.

18.     Throughout Plaintiff's employment with the Agency, she witnessed or learned of male superiors and counterparts, including Defendant Moore, Corporal Kenneth Thorton, Corporal Henry Jackson, and Corporal Jeffrey Brown, engaging in inappropriate behavior of a sexually explicit nature.  Plaintiff was also subject to sexual harassment.

19.      The inappropriate behavior engaged in by Plaintiff's male supervisors included: making sexual advances toward female passers-by, using vulgar language, making lewd jokes and comments about female subordinates' bodies and clothing, subjecting female subordinates to unnecessary physical contact, openly looking at and subjecting female employees to pornography, exposing themselves, and propositioning female employees for sex.

20.     Defendant Moore actively participated in sexual harassment and in creating a hostile work environment.  He often made degrading remarks about women, stating that female officers do not know how to do their job because of their gender and making public comments about menstruating.

21.     Defendant Moore and other male supervisors and officers regularly viewed pornography on work computers, which they openly discussed with other male employees in the presence of female employees.

22.     Defendant Moore engaged in sexually inappropriate touching of Plaintiff and her female co-workers.  For instance, Defendant Moore and other male supervisors often subjected Plaintiff and her female co-workers to unnecessary physical inspections.

23.     Defendant Moore and other male supervisors often brushed up against Plaintiff and her female counterparts in the elevator of their workplace.

24.     Plaintiff was subject to sexual harassment by Defendant Moore, including sexually explicit comments about her body and the bodies of her female co-workers, offensive remarks to Plaintiff about sexual acts, and sexually inappropriate, offensive, and unwelcome physical contact.

25.     In approximately April of 2003, Defendant Moore learned that Plaintiff had broken off her engagement to a man with whom she had been involved for several years.  At that time, Defendant Moore began increasingly to direct his sexual comments and behavior towards Plaintiff.

26.     While Ms. Parker repeatedly told Defendant Moore that she was not interested, Defendant Moore continued to make inappropriate comments to Plaintiff, to touch her, and proposition Plaintiff for sex.

27.     In the summer of 2003, Defendant Moore began calling Ms. Parker regularly at her home in the evenings after her shift.  Plaintiff tried to avoid Defendant's advances by asking someone else to answer the phone.  The one time Plaintiff agreed to speak with him, Defendant Moore told her that he was in her neighborhood and requested that she meet him to have sex.

28.     On one occasion, one of Ms. Parker's daughters answered the phone.  Not realizing that it was not Ms. Parker, Defendant Moore began speaking to Plaintiff's daughter in a sexually suggestive and explicit manner.

29.     During roll calls in 2003 and 2004, Defendant Moore and other male supervisors inappropriately commented about the way Ms. Parker looked in her uniform pants.  He sometimes made these comments in the presence of other BEP employees.

30.     In approximately April 2004, Ms. Parker attended training in Georgia to become a Defensive Tactics instructor.   During this training, which lasted approximately 2.5 weeks, Defendant Moore repeatedly tried to contact Ms. Parker under the guise of wanting to discuss her schedule.   When Ms. Parker responded to Defendant Moore's messages, Defendant Moore told her that he wanted to get together when she returned to town so they could have sex.   Defendant Moore's calls to Ms. Parker were so disruptive that a supervisor at the training relayed a message to Moore to stop calling Ms. Parker.

31.     Nonetheless, Defendant Moore then sent Plaintiff a text message containing a photograph of his genitals and a description of what he wanted to do to her sexually.

32.     In August 2004, Defendant Moore summoned Plaintiff to his office and asked her to close the door.   Moore then kissed Plaintiff on her mouth, grabbed her by the waist, rubbed his genitals against her and, pointing to his erection, told Plaintiff that she had done that to him.

33.     Ms. Parker was noticeably startled and frightened by Defendant Moore's behavior.   She immediately pulled away from him and ran to her Department's Health Unit crying.   Upon her arrival, a nurse commented that she knew Plaintiff was being harassed by Defendant Moore.

34.     On or about September 9, 2004, Defendant Moore called Ms. Parker from his office on her work phone and told her about a sexually explicit dream he had about her and another female.   Defendant Moore went into great detail about this dream, describing to Ms. Parker sexual acts between the two of them and that he awoke from the dream when he climaxed.   Shocked and frightened by Defendant Moore's words, Ms. Parker told Moore that she was not interested and  hung up the phone on him.

35.    The sexually disparaging behavior of Defendant Moore and the other male supervisors was also directed towards other female employees.

36.    Upon information and belief, in 2002, Defendant Moore exposed himself to former officer Kerry Williams and asked her to touch his genitals.

37.    Upon information and belief, in 2003, Defendant Moore made sexually suggestive remarks to former Corporal Aileen Joy.

38.    Upon information and belief, in approximately late 2003, Defendant Moore kissed Susan Vandigriff, an employee who worked with Ms. Parker, during her shift.  When Ms. Vandigriff told Defendant Moore that he could not do that, Moore told her that he knew she liked it.

39.    Around that same time, Defendant Moore touched Ms. Vandigriff on her breast.

40.    On another occasion, Defendant Moore requested that Ms. Vandigriff engage in a "three-way" with him.

41.    In early 2005, Defendant Moore masturbated himself while Ms. Vandigriff was working in his office.

42.    Upon information and belief, in 2005, Defendant Moore exposed himself to Sergeant Sherri Tutt.

43.    Upon information and belief, Defendant Moore exposed himself to Corporal Zadah Lewis in September 2005.

### PLAINTIFF'S SUPERVISORS FAIL TO RESPOND TO COMPLAINTS ABOUT SEXUAL HARASSMENT

44.    Defendant Moore's inappropriate sexual behavior at the workplace was widely known within the department.  Several of the women complained to their supervisors, including Commander Christopher Cooch, one of Plaintiff's supervisors, about Defendant Moore's

inappropriate sexual conduct. Several women also filed EEO complaints. Defendant Moore's conduct, and the failure of his supervisors to take any action against him, was a frequent topic of conversation among female employees.

45. Beginning in approximately January of 2004, Commander Cooch presided over female-only meetings that were presumably intended to allow female BEP employees to voice their concerns regarding the predominantly male work environment. At these meetings, Plaintiff and other female BEP employees openly complained of Defendant Moore and other male supervisors' sexually harassing behavior and of the sexually hostile work environment this created.

46. Although Commander Cooch promised that what was said in the meetings would be kept confidential, this was not the case. In fact, the subject matter of these meetings became so widely known that some of the male employees began threatening to file a grievance with the union if the meetings persisted. When Commander Cooch learned that male employees were complaining about the female-only meetings, Commander Cooch promptly terminated them.

47. When, in early 2005, Ms. Vandigriff met with Commander Cooch to complain about Defendant Moore's lewd behavior toward her and Plaintiff, his response was that he had taken care of it. During this meeting, Commander Cooch telephoned Defendant Moore and joked with him about his sexually harassing behavior.

48. Plaintiff and other female BEP employees were repeatedly threatened not to bring charges against their male supervisors.

49. During roll call, Plaintiff and female BEP employees women were advised by their male supervisors that if they filed charges against them, the supervisors would make life difficult for them.

50.    In September of 2004, shortly after Plaintiff first contacted the EEO, she was approached by an officer who relayed a message from Defendant Moore to the effect that, if Plaintiff knew better, she would not pursue an EEO complaint against Defendant Moore.

51.    On another occasion that same month, Plaintiff was approached by a Corporal who told her that Defendant Moore told her to not pursue her EEO complaint.

52.    On at least two occasions in 2004, two male supervisors, concerned for Plaintiff's well-being, warned her to "watch [her] back."

### PLAINTIFF'S CONSTRUCTIVE DISCHARGE

53.    On September 11, 2004, Plaintiff contacted Commander Cooch to request a meeting.  She advised Commander Cooch that this was a matter of great importance.

54.    On September 13, 2004, three days after Plaintiff rejected Defendant Moore's sexual advances on the telephone, Defendant Moore commanded Plaintiff to his office where he gave her a "Leave Restriction Memorandum."

55.    Shortly after this meeting, on September 13, 2004, Plaintiff contacted the EEO regarding Defendant Moore's actions.

56.    On approximately September 28, 2004, Plaintiff complained to Commander Christopher Cooch about Defendant Moore's sexually inappropriate behavior toward her. Although Defendant Moore was removed from Plaintiff's chain of command, this did not end his harassing behavior.

57.    On October 7, 2004, Plaintiff filed formal charges with the EEO.

58.    After Plaintiff went to the EEO to complain about the sexually hostile work environment, in October 28, 2004, BEP Police Chief David Lindsay told her that it was too late for him to do anything.

59.    Plaintiff's health was seriously affected by Defendant Moore's abuse of the authority he held over her, by the continuing sexual advances and sexually inappropriate behavior, by the Agency's fail to effectively address these advances, and by the hostile work environment at the BEP.

60.    Specifically, in October 2002, Plaintiff began suffering from Irritable Bowel Syndrome ("IBS").  She later began to suffer from depression, increased blood pressure, and severe headaches.  By October of 2004, Plaintiff was also suffering from a loss her appetite, difficulty sleeping and panic attacks.  On October 13, 2004, approximately one week after Plaintiff filed her EEO charge, she suffered a severe panic attack that caused her to go to the emergency room for what she believed was a heart attack.

61.    The Leave Restriction Memorandum issued by Defendant Moore required that Plaintiff comply with several new requirements before being permitted to take unscheduled leave, and left the decision whether to grant the leave entirely to the discretion of Defendant Moore.  For instance, Plaintiff was required to notify Defendant Moore or his designee in advance of taking  leave.  If, for some reason, Plaintiff was unable to reach Defendant Moore, she was not permitted to take the leave.  Plaintiff was also required to provide documentation of any emergency or illness.   Whether that documentation was acceptable was entirely up to Defendant Moore.

62.    On three occasions between October of 2004 and March of 2005, Plaintiff attempted to take emergency leave as a result of her children's or her own illness.  On each occasion, Plaintiff attempted to comply with Defendant Moore's Leave Memorandum by following the steps outlined therein.  On each occasion, Plaintiff was nonetheless placed on non-paying "AWOL" status.

63.     On March 8, 2005 Plaintiff was noticed with suspension.

64.     On May 24, 2005, Plaintiff, who was still suffering from continuing medical problems, including depression, stress, anxiety and continued apprehension and fear regarding her work environment, at the suggestion of two doctors resigned from the Agency.


**VII.     CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF 42 U.S.C. §§ 2000e,** *et seq.*
**SEXUAL HARASSMENT, IN VIOLATION OF TITLE VII**

**Against Defendant Treasury**

65.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

66.     Title VII of the Civil Rights Act prohibits employers from discriminating against its employees on the basis of sex.  This prohibition includes sexual harassment and creating a hostile work environment.

67.     Defendant Treasury and/or its agents or employees acting on its behalf, subjected Plaintiff to sexual harassment and/or a hostile work environment, in violation of Title VII, 42 U.S.C. §2000e-3.

68.     Defendant Treasury knew or should have known of the sexual harassment and hostile work environment Plaintiff suffered.

69.     Defendant Treasury's conduct has been intentional, deliberate and willful and Defendant has acted in callous disregard of Plaintiff's rights

70.     These acts and practices violate Title VII as well as the statutory provisions and regulations that specifically apply to the federal government as an employer.

71.     As a result of the sexual harassment and/or hostile work environment, Plaintiff has suffered pain, embarrassment, mental anguish and humiliation.  Plaintiff has also been made to incur medical expenses, and the loss of front and back pay as a direct result of Defendant's actions.

72.     As a consequence of Defendant Treasury's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

## COUNT II

### VIOLATION OF THE D.C. HUMAN RIGHTS ACT, §2-1401.01, *et seq*. SEXUAL HARASSMENT

### Against Defendant Treasury

73.     The District of Columbia Human Rights Act, as amended, D.C. Code §2-1401.01, *et seq.*, prohibits employers from discriminating against its employees on the basis of gender. This prohibition includes sexual harassment and creating a hostile work environment.

74.     Defendant Treasury and/or agents or employees acting on its behalf, subjected Plaintiff to sexual harassment and/or hostile environment, in violation of  D.C. Code §2-1401.01.

75.     Defendant Treasury's conduct has been intentional, deliberate and willful and Defendant has acted in callous disregard of Plaintiff's rights.

76.     Defendant Treasury knew or should have known of the sexual harassment and hostile work environment Plaintiff suffered.

77.     As a result of the sexual harassment and/or hostile work environment, Plaintiff has suffered pain, embarrassment, mental anguish and humiliation.  Plaintiff has also been made

to incur medical expenses, and the loss of front and back pay as a direct result of Defendant's actions.

78.    As a consequence of Defendant Treasury's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

## COUNT III

### VIOLATION OF 42 U.S.C. §§ 2000e, *et seq.*
### CONSTRUCTIVE DISCHARGE

### Against Defendant Treasury

79.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

80.    But for the hostile work environment and/or sexual harassment suffered by Plaintiff set forth above, Plaintiff would not have been forced to retire and involuntarily depart from her employment

81.    The employment circumstances heretofore complained of represent constructive discharge inasmuch as no reasonable person in similar situation would have had any option but to separate from his/her employment.

82.    As a result of Defendant Treasury's actions Plaintiff has suffered pain, embarrassment, mental anguish and humiliation.  Plaintiff has also been made to incur medical expenses, and the loss of front and back pay as a direct result of Defendant's actions.

## COUNT IV

### VIOLATION OF THE D.C. HUMAN RIGHTS ACT, §2-1401.01, *et seq*. CONSTRUCTIVE DISCHARGE

#### Against Defendant Treasury

83.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

84.    But for the hostile work environment and/or sexual harassment suffered by Plaintiff set forth above, Plaintiff would not have been forced to retire and involuntarily depart from her employment

85.    The employment circumstances heretofore complained of represent constructive discharge inasmuch as no reasonable person in similar situation would have had any option but to separate from his/her employment.

86.    As a result of Defendant Treasury's actions, Plaintiff has suffered pain, embarrassment, mental anguish and humiliation.  Plaintiff has also been made to incur medical expenses, and the loss of front and back pay as a direct result of Defendant's actions.

## COUNT V

### NEGLIGENT HIRING, SUPERVISION AND RETENTION

#### Against Defendant Treasury

87.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

88.    Defendant Treasury knew, or should have known, that Defendant Moore had the propensity to behave in the manner he behaved, namely sexually harassing Plaintiff.

89.    Defendant Treasury failed to properly investigate and or inquire into Defendant Moore's background prior to hiring him.

90.    The sexual harassment Plaintiff experienced was directly related to Defendant Treasury's failure to properly investigate Defendant Moore prior to hiring him.

91.    After learning about the sexual assault committed by Defendant Moore, and the sexual harassment, Defendant Treasury continued to keep Defendant Moore in its employ.

92.    After learning about the sexual assault committed by Defendant Moore, and the sexual harassment, and Plaintiff's complaints to several management officials, Defendant Treasury continued to keep each management official in its employ.

93.    Defendant Treasury owed a duty to Plaintiff to provide a safe, non-hostile work environment, one that was free of sexual assault and sexual harassment.

94.    Defendant Treasury breached that duty owed to Plaintiff when it failed to adequately train, supervise, discipline or in any other way control Defendant Moore, or the management official to whom Plaintiff complained.

95.    As a direct and proximate result of the negligent acts and omissions on the part of the Defendant Treasury, Plaintiff's ability to enjoy her work and work in an environment in which her co-workers were permitted to work, was adversely affected.

96.    As a result of Defendant Treasury's actions and/or inaction, Plaintiff has suffered pain, embarrassment, mental anguish and humiliation.  Plaintiff has also been made to incur medical expenses, and the loss of front and back pay as a direct result of Defendant's actions.

## COUNT VI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### Against Defendant Moore

97.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

98.    Defendant Moore's actions in subjecting Plaintiff and her co-workers to sexually explicit conversation, pornography,  inappropriate language, and unwanted touching constituted extreme and outrageous conduct.

99.    Defendant Moore's committed his acts intentionally, and each act caused Plaintiff severe emotional distress and embarrassment.

100.     Defendant Moore should have known that his behavior would have the probable consequences of causing Plaintiff severe emotional stress.

101.    As a result of Defendant Moore's outrageous conduct, Plaintiff has suffered pain, embarrassment, mental anguish and humiliation.  Plaintiff has also been made to incur medical expenses, and the loss of front and back pay as a direct result of Defendant's actions.

## COUNT VII

### ASSAULT

#### Against Defendant Moore

102.    Plaintiff re-alleges and re-incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

103.    The actions of Defendant Moore, in  physically forcing himself upon Plaintiff, propositioning her for sex, and subjecting her to unnecessary physical inspections, placed Plaintiff in apprehension of further offensive conduct and/or physical harm.

104.    As a result, Plaintiff has suffered pain, embarrassment, mental anguish and humiliation.  Plaintiff has also been made to incur medical expenses, and the loss of front and back pay as a direct result of Defendant  Moore's actions.

## COUNT VIII

### BATTERY

### Against Defendant Moore

105.    Plaintiff re-alleges and re-incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

106.    The actions of Defendant Moore, in  physically forcing himself upon her, intentionally  inflicted harmful and offensive physical contact upon Plaintiff.

107.    As a result, Plaintiff has suffered pain, embarrassment, mental anguish and humiliation.  Plaintiff has also been made to incur medical expenses, and the loss of front and back pay as a direct result of Defendant's actions.

**VII.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Parker respectfully prays that this Court assume jurisdiction of this action and:

108.    Issue a declaratory judgment that the acts and practices of Defendants complained of herein have violated the civil rights of Plaintiff Parker;

109.    Order Defendant Treasury to award Ms. Parker actual damages for her lost wages and lost benefits;

110.    Order Defendant Treasury to reinstate Ms. Parker to a permanent position comparable to her former position away from the D.C. Office;

111.    Order Defendant Treasury to award Ms. Parker compensatory damages in an amount of $300,000 for the harm she has suffered as a result of Defendant's unlawful actions in violation of the rights secured by Title VII of the Civil Rights Act of 1964;

112.    Order Defendant Treasury to award Ms. Parker compensatory damages as deemed proper and just for the harm she has suffered as a result of Defendant's unlawful actions in violation of the rights secured by the District of Columbia Human Rights Act;

113.    Order Defendant Treasury to pay Ms. Parker compensatory damages as deemed proper and just for the harm she has suffered s for negligent hiring, supervision and retention;

114.    Order Defendant Moore to pay Ms. Parker compensatory damages as deemed proper and just for the harm she has suffered for intentional infliction of emotional distress;

115.    Order Defendant Moore to pay Ms. Parker compensatory damages as deemed proper and just for the harm she has suffered for assault;

116.    Order Defendant Moore to pay Ms. Parker compensatory damages as deemed proper and just for the harm she has suffered for battery;

117.    Order Defendants to pay reasonable attorneys' fees and litigation expenses incurred in this matter; and

118.    Order such additional relief as the Court deems proper and just.

Dated:  December 20, 2006                    Respectfully submitted

_____
David W. Sanford, D.C. Bar No. 457933
Stefanie Roemer, D.C. Bar. No. 464450
**SANFORD, WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile: (202) 742-7776
dsanford@nydclaw.com
sroemer@nydclaw.com

*Attorneys for Plaintiff*

06-2169
H
CKK

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Kimberly Parker

98888

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

David W. Sanford, D.C. Bar No. 457933
Stefanie Roemer, D.C. Bar. No. 464450
SANFORD, WITTELS & HEISLER, LLP
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780

## DEFENDANTS

Henry M. Paulson, Jr., Secretary, U.S. Department of the Treasury, et al.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

CASE NUMBER  1:06CV02169

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Employment Discrimination

DATE STAMP: 12/21/2006

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES

FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ **A. Antitrust**
  - ☐ 410 Antitrust

- ○ **B. Personal Injury/Malpractice**
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ○ **C. Administrative Agency Review**
  - ☐ 151 Medicare Act
  - **Social Security:**
  - ☐ 861 HIA (1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g)
  - **Other Statutes**
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ **D. Temporary Restraining Order/Preliminary Injunction**

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

## ○ E. General Civil (Other)     OR     ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

① defendant

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq.; gender discrimination, sexual harassment, hostile work environment

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ $300,000.00 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒    NO ☐ |

**VIII. RELATED CASE(S) IF ANY** (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE December 20, 2006    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.