# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

KIMBERLY PARKER,

               Plaintiff,                                    Civil Action No.:  06-CV-2169 (CKK)

     v.

HENRY PAULSON, Secretary of
the Treasury; PRESTON MOORE,
in his individual capacity,

               Defendants.

_____/

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MOORE'S MOTION TO DISMISS AND/OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

       Defendant Preston Moore, in his individual capacity, respectfully submits this

memorandum of points and authorities in support of his motion to dismiss and/or in the alternative

motion for summary judgment.

## I.

## STATEMENT OF THE CASE

       Plaintiff Kimberly Parker, brings this action against Defendant Preston Moore, in his

individual capacity, for Intentional Infliction of Emotional Distress (Count VI); common-law

assault (Count VII); and common-law battery (Count VIII).  These common law torts arise as

supplemental claims to allegations against Defendant Paulson of sexual harassment and hostile

work environment in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-

16, et. seq. (Count I); Sexual Harass pursuant to the D.C. Human Rights Act (Count II);

Constructive Discharge (Count III); Constructive Discharge pursuant to the D.C. Human Rights

Act (Count IV); and Negligent Hiring, Supervision and Retention (Count V)

## II.

## <u>BACKGROUND FACTS GIVING RISE TO THE COMPLAINT AGAINST MOORE</u>

Plaintiff commenced her employment with the Defendant on February 12, 2001. (Comp.

¶11)  Beginning in approximately *January 2002*, plaintiff alleges defendant Moore became her

second line supervisor.  (Comp. ¶16)  Without any specific date, plaintiff alleged defendant Moore

engaged in touching of the plaintiff and her female co-workers and along with other supervisors

subjected the plaintiff and her female coworkers to unnecessary physical inspections.  (Comp.

¶22)  Plaintiff further alleges defendant Moore and other supervisors often brushed up against the

plaintiff and her female counterparts in the elevator of their workplace.  (Comp. ¶23)

The plaintiff alleges that in approximately *April 2003*, after learning the plaintiff had

broken off her engagement to another man, defendant Moore began directing sexual comments

and behavior towards the plaintiff. (Comp. ¶25)   In this regard, plaintiff alleges defendant Moore

made inappropriate comments toward her, touched her and proposition her for sex. (Comp. ¶26)

In the *summer of 2003*, plaintiff alleged that defendant Moore began regularly calling her at home

after her shift and informed her he was in her neighborhood and requested that she meet him to

have sex. (Comp. ¶27)

During unspecified roll calls in *2003 and 2004*, plaintiff alleges that defendant Moore and

other male supervisors commented about the way the plaintiff looked in her pants.  (Comp. ¶29)

Plaintiff further alleged that in *April 2004,* Moore sent a picture of his genitals to plaintiff in a text

message. (Comp. ¶31)

In *August 2004*, plaintiff alleges defendant Moore summoned her to his office, kissed her

on the mouth; grabbed her by the waist; rubbed his genitals against her and pointing to his

erection, told plaintiff that she had done that to him. (Comp. ¶32)  The plaintiff further alleges on *September 9, 2004*, defendant Moore called her from his office on her work telephone and went into great detail about a sexually explicit dream.  (Comp. ¶34)  Plaintiff then asserts, upon information and belief, other alleged instances when defendant Moore kissed or touched other female employees from a period of *2002 through September 2005*.  (Comp. ¶¶ 36-43)

The plaintiff then sets forth other dates concerning incidents which she alleges were a result of or a part of the alleged overall harassment she was subject to by defendant Moore and others:

- *October 2002* - plaintiff began suffering from Irritable Bowel Syndrome; (Comp. ¶ 60)

- *October 2004* - plaintiff suffered loss of appetite; (Comp. ¶ 60)

- *October 13, 2004* - plaintiff suffered a severe panic attack; (Comp. ¶ 60)

- *October 2004 - March 2005* - plaintiff was placed on AWOL status; (Comp. ¶62)

- *March 8, 2005* - plaintiff was noticed for suspension;  (Comp. ¶63)

- *May 24, 2005* - plaintiff resigned her employment;  (Comp. ¶64)

### III.

### APPLICABLE LEGAL STANDARDS

**A.    The Motion to Dismiss Standard Under 12(b)(1) and 12(b)(6)**

Once a defendant has moved to dismiss a case pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The Court, in turn, has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority.

*Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005). A court ruling on a Rule 12(b)(1) motion to dismiss may consider documents outside the pleadings to assure itself that it has jurisdiction. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir.1987). The level of scrutiny with which the Court examines the allegations in the complaint that support a finding of jurisdiction, however, depends upon whether the motion to dismiss asserts a facial or factual challenge to the court's jurisdiction. *See I.T. Consultants v. Pakistan*, 351 F.3d 1184, 1188 (D.C. Cir. 2003).

To prevail on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A Rule 12(b)(6) motion is intended to test the legal sufficiency of the complaint. *Kingman Park Civic Association v, Williams*, 348 F.3d 1033 (D.C. Cir. 2003). The complaint need only set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), giving the defendant fair notice of the claim and the grounds upon which it rests. *Conley*, supra. "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Id*. at 47-48. In light of these liberal pleading requirements, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 45-46. The court must accept the plaintiff's factual allegations as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and draw all inferences in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

While the Court must construe the complaint in the Plaintiff's favor, it "need not accept

4

inferences drawn by [the] plaintif[f] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the Court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). When a motion to dismiss is based on the complaint, the facts alleged in the complaint control *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

## B.    The Summary Judgment Standard

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Fed. R. Civ. P. 56(c)*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.*

In assessing a summary judgment motion, the Supreme Court has explained that a trial court must look to the substantive law of the claims at issue to determine whether a fact is "material," *Id.* at 248, and must treat a "genuine issue" as "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Sanders v. Veneman*, 211 F. Supp. 2d 10, 14 (D.D.C. 2002).

The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.* at 255. If there is any evidence in the record from which a reasonable inference could be

5

drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. The court must resolve any doubts and make all reasonable inferences in favor of the opposing party. *Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 814-15 (D.C. Cir. 1981).

To defeat a motion for summary judgment, the nonmoving party must do more than simply show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 575, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

In the same vein, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1966).

## IV.

## ARGUMENT

**A.    The Claims for Assault and Battery Under Counts VII and VIII are Time-Barred and Must be Dismissed as a Matter of Law**

Counts VII and VIII of the complaint allege common law assault and battery against defendant Moore in his individual capacity. The claims in Counts VII and VIII of the complaint must be dismissed as they are time-barred and outside the limitations period set forth by D.C. Law.

In assessing state law claims brought in federal court, the law of the District of Columbia

6

governs. *Keefe Company v. Americable International, Inc.*, 219 F.3d 669 (D.C.Cir. 2000). In this regard, the federal courts in the District of Columbia treat the District of Columbia as a state for purposes of the Erie Doctrine. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995). Therefore, a federal court sitting in diversity or other supplemental state law actions look to state law to determine whether a cause of action based upon state law has expired. *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945). It is the source of the right, not the basis of federal jurisdiction, which determines the controlling law. *See Van Gemert v. Boeing Co.*, 553 F.2d 812, 813 (2d Cir. 1977). Accordingly, a defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint. *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 338 F. Supp. 2d 97, 101 (D.D.C. 2004).

A review of the complaint reflects the source of the right asserted for common-law assault and battery is the law of the District of Columbia.[1] Thus, under D.C.'s statute of limitations for assault and battery, the issue for the Court is whether plaintiff brought this suit more than one year after the time the right to maintain the action accrued. D.C. Code § 12-301(4).[2]

---

[1]     An assault is "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993) "A battery is an intentional act that causes a harmful or offensive bodily contact." *Id.*

[2]     D.C. Code Section 12-301 provides:

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

(4)     for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment -- 1 year;

A review of the complaint, taking each factual allegation as true, reflects that an assault and battery claim against defendant Moore in his individual capacity, commenced on *January 2002* (Comp. ¶16); *April 2003* (Comp. ¶25); and *August 2004* (Comp. ¶32). There are no other dates supplied and the plaintiff eventually terminated her employment with the agency on May 24, 2005. Thus, the latest date which the plaintiff should have brought an action against defendant Moore in his individual capacity for assault and battery was January 2003 (Comp. ¶16); April 2004 (Comp. ¶25); or August 2005 (Comp. ¶32). The instant complaint was filed on January 11, 2007. At the time of filing, the limitations period had expired 18 months at the earliest and 4-years after the first alleged instance of assault and battery. Accordingly, Counts VII and VIII must be dismissed as the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.

**B.      The Claims for Assault and Battery Under Counts VII and VIII are Claims Against the United States and Only Cognizable Under the Federal Tort Claims Act**

In the same vein, the claims for common-law assault and battery against defendant Moore, are claims which arise solely under the Federal Tort Claims Act. (FTCA)  *See* 28 U.S.C. 2671, et. seq. In this regard, the alleged assault and battery claims arose within the scope of defendant Moore's employment. The plaintiff failed to file an administrative claim against the United States within the *two-year* statutory claim period. As a result, if defendant Moore acted within the scope of his employment, the plaintiff cannot maintain her claims under Counts VII and VIII, because: (i) they are time-barred; (ii) she failed to exhaust her administrative remedies; and (iii) they are claims exclusively against the United States and excluded from coverage under the FTCA.

The United States, under the FTCA, "shall be liable . . . in the same manner and to the

same extent as a private individual under like circumstances." *See* 28 U.S.C. §2674.  The effect of this provision is quite clear.  When someone is injured by a tort committed by an employee of the United States, acting within the scope of his employment, that employee cannot be sued.  Rather, the injured person must sue the United States which is liable in its employee's stead.  The FTCA's provisions placing liability on the United States are exclusive.

In the same vein, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, requires individuals with certain types of tort claims against the United States to present those claims to the appropriate agency within two years of the events giving rise to the claims and then to file suit within 6-months of the denial of the claim. 28 U.S.C. §§ 2401(b), 2675(a);  *Norman v. United States*, 467 F.3d 773 (D.C. Cir. 2006).  Under the Westfall Act, once the Attorney General certifies that an employee of the federal government was "acting within the scope of his office or employment" at the time of an incident, any claims arising out of that incident are converted into claims against the United States.  *Bancoult v. McNamara*, 445 F.3d 427 (D.C.Cir. 2006).

Initially, it should be noted the United States has not filed a scope of employment certification with the Court concerning the alleged conduct of defendant Moore.  *See* 28 U.S.C. §2679(d)(1)[3]  Where the Attorney General fails to make the required certification, the federal court may determine independently whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant.  *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995);  *Kimbro v. Velten*, 30 F.3d 1501, 1505 (D.C. Cir. 1994), *cert. denied*, 515 U.S. 1145 (1995).   If the reviewing court determines that the employee

---

[3]     Section 2679(d)(1) provides that once the Attorney General has certified that the employee was acting within the scope of employment, the United States will be substituted for the employee as the party defendant in any action filed against the employee.  *See* 28 C.F.R. § 15.3.

acted within the scope of official duties, the employee becomes absolutely immune for actions for money damages arising from the same incident. *Harbury v. Hayden*, 444 F.Supp.2d 19 (D.D.C. 2006). The plaintiff's only recourse is to then proceed against the federal government under the FTCA. *Id.*

1.    **The Claims Against Moore Were Within the Scope of His Employment**

To determine whether a federal employee was acting within the scope of his or her employment, a federal court must apply the law of the state where the tortious act occurred. *See Tarpeh-Doe v. United States*, 28 F.3d 120, 123 (D.C. Cir. 1994). From the complaint, there is no doubt the common-law claims of assault and battery arose while the defendant Moore was in the workplace located within the District of Columbia. (Comp. ¶3) Accordingly, the Court must look to the scope-of-employment test as applied by the D.C. Courts.

The District of Columbia looks to the Restatement (Second) of Agency as the proper framework for determining whether an employee acted within the scope-of-employment. *See Haddon, v. United States*, 68 F.3d 1420, 1423-24 (D.C. Cir. 1995); *Harbury v. Hayden*, *supra*. The Restatement provides:

> [c]onduct of a servant is within the scope of employment if, but only if: (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the master; and (4) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.

Restatement (Second) of Agency § 228 (1958); *Harbury, Id.*

In reviewing scope-of-employment determinations, this Court has looked at (1) the nature of the conduct at issue; (2) space and time limitations; (3) the purpose of the conduct; and (4) the foreseeability of the conduct to determine whether a certification and contemporaneous

10

substitution would be proper in a case.

## 2. Nature of the Conduct/Foreseeability

In *Harbury, supra*, this Court wrote:

> To qualify as conduct of the kind within the scope of one's employment, the conduct must either have been "of the same general nature as that authorized" or "incidental to the conduct authorized." *Harbury, supra citing* Restatement (Second) of Agency § 229 (1958); *Haddon*, 68 F.3d at 1424. The District of Columbia "liberally construes the doctrine of respondeat superior . . . with respect to the first prong of the Restatement (Second) of Agency § 228(1)." *Stokes*, 327 F.3d at 1216 (citing *Haddon*, 68 F.3d at 1425-26; *Weinberg*, 518 A.2d at 988-90).

> [C]onduct is "incidental" to an employee's legitimate duties if it is "foreseeable." "Foreseeable" in this context does not carry the same meaning as it does in negligence cases; rather, it requires the court to determine whether it is fair to charge employers with responsibility for the intentional torts of their employees. To be foreseeable, the torts must be "a direct outgrowth of the employee's instructions or job assignment." It is not enough that an employee's job provides an "opportunity" to commit an intentional tort. *Haddon*, 68 F.3d at 1424 (citations omitted).

The courts in the District of Columbia categorize practically any conduct as falling

within the scope of, or incidental to, that authorized by their employer so long as the action has

some nexus to the action authorized. *Id.* This Court continued:

> In *Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976), the D.C. Circuit upheld a jury verdict that a mattress deliveryman acted within the scope of his employment when he assaulted and raped the plaintiff immediately following a dispute over whether he should carry the mattress into the apartment for her inspection and whether a check was an acceptable means of payment. The Lyon court emphasized that "[t]he dispute arose out of the very transaction which had brought [the deliveryman] to the premises," and observed that the assault "arose naturally and immediately between [the deliveryman] and the plaintiff about two items of great significance in connection with his job[:] the request of the plaintiff . . . to inspect the mattress and springs before payment . . . and [the deliveryman's] insistence on getting cash rather than a check." Id. at 652. Moreover, in *Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981), the D.C. Court of Appeals similarly ruled that a laundromat could be liable for injuries inflicted when an employee responsible for removing clothes from washing machines shot a customer during a dispute involving missing shirts. Because "[t]he assault arose out of the transaction which initially brought [the customer] to the premises . . . and was triggered

by a dispute over the conduct of the employer's business," the court held that the jury
could find the shooting incidental to the employment. *Id.* at 409. Virginia follows a
similar analysis, finding actions to be within the scope of employment so long as at least
some nexus exists. *See, e.g., Martin*, 48 F.3d at 1352 (company liable for assaults
undertaken by its general manager where the "assaults took place in the workplace, during
working hours, on an employee whom he had authority to hire, fire, promote, and
discipline" and therefore "arose out of [the manager's] management of the hotel").

*Id.*

As such, the relevant "inquiry is necessarily whether the intentional tort was foreseeable,

or whether it was 'unexpectable in view of the duties of the servant.'" *Majano v. Kim*, No. Civ. A

04-201, 2005 WL 839546, at *8 (D.D.C. Apr. 11, 2005) (quoting Restatement (Second) of

Agency § 245). "[A] broad range of intentional tortious conduct has been found to be within the

scope of employment despite the violence by which injury was inflicted," *id.*, and employers may

be held liable for "foreseeable altercations [that] may precipitate violence . . . even though the

particular type of violence was not in itself anticipated or foreseeable," *Harbury, supra, citing*

*Lyon*, 533 F.2d at 651.

### 3.    Purpose of the Conduct

In addition to looking at the nature and foreseeability of the conduct at issue, this Court

must also address whether the alleged actions were perpetuated, at least in part, for the

purpose of serving the master. See Restatement (Second) of Agency § 228. "[W]here the

employee is in the course of performing job duties, the employee is presumed to be

intending, at least in part, to further the employer's interests." *Weinberg*, 518 A.2d at 989

(citation omitted).

The D.C. Circuit has stressed the idea that "[t]he intent criterion focuses on the underlying

dispute or controversy, not on the nature of the tort, and is broad enough to embrace any

intentional tort arising out of a dispute that 'was originally undertaken on the employer's behalf.'"

12

*Stokes v. Cross*, 327 F.3d 1210, 1216 (D.C. Cir. 2003) (quoting *Weinberg*, 518 A.2d at 992).

Finally, "[t]he employer does not avoid liability for the employee's intentional torts . . . if the tort

is committed partially because of a personal motive, such as revenge, as long as 'the employee [is]

actuated, at least in part, by a desire to serve his principal's interest.'" *Weinberg*, 518 A.2d at 988

(citing *Jordan v. Medley*, 711 F.2d 211, 214 (D.C. Cir. 1983); Restatement (Second) of Agency §

245 (1958)).

## C.     Moore's Alleged Tortious Conduct

The complaint alleges that defendant Moore was the plaintiff's second-line supervisor.

(Comp. ¶16).  In this capacity, defendant Moore's duties included overseeing the assignment of

officers to shifts and posts, administering disciplinary action and adjudicating leave requests.  *Id.*

It is alleged he stated that female officers do not know how to do their job.  (Comp. ¶20)

Further, the complaint alleges that defendant Moore and other male supervisors often

subjected plaintiff and her female co-workers to unnecessary physical inspection which resulted in

"sexually inappropriate touching" of the plaintiff.  (Comp. ¶22)  Defendant Moore and other male

supervisors often brushed up against the plaintiff and her female counterparts in the elevator of

their workplace. (Comp. ¶23)  The plaintiff further alleges that "during roll calls" defendant

Moore and other male supervisors inappropriately commented about the way the plaintiff looked

in her uniform pants. (Comp. ¶29)

In August 2004, its is alleged that defendant Moore summoned the plaintiff to his office in

the workplace and asked her to close the door whereupon he allegedly kissed her, grabbed her by

the waist, and rubbed his genitals against her.  (Comp. ¶32).

The plaintiff claims all of these alleged occurrences took place in the workplace.  The

alleged physical touching occurred while defendant Moore was in police uniform, and was acting as the plaintiff's second-line supervisor. Alleged incidents occurred at roll call, in agency elevators and in defendant Moore's office. Indeed, the picture painted by the plaintiff's allegations was that Moore's alleged conduct was actuated, at least in part, by a desire to serve the agency's interest. Defendant Moore was in the course of performing his job duties. He was intending, at least in part, to further the employer's interests. The alleged conduct was also foreseeable and was a direct outgrowth of the parties' job assignments. Consequently, the Court should find that Moore's alleged conduct was within the scope of his employment.

**D.      The FTCA Warrants Dismissal of the Assault and Battery Counts**

As noted above, if the Court concludes defendant Moore acted within the scope of employment, the FTCA controls and the United States must be substituted as the sole defendant. *See* 28 U.S.C. §2679(b)(1). It would then be incumbent for the United States to initiate a proper motion with the Court for the purpose of addressing the plaintiff's failure to initiate an administrative claim against the United States or any other defense it can raise under the FTCA.[4]

**E.      The Claim For Intentional Infliction of Emotional Distress is Time-Barred**

In Count VI of the complaint, plaintiff asserts a claim against defendant Moore in his individual capacity. Because the emotional distress count is intertwined with the assault and battery allegations, the count is time-barred and must be dismissed.

Generally, an action for intentional infliction of emotional distress is governed by the

---

[4]      Under the circumstances of this case, the assault and battery claims cannot be raised under the FTCA and would, therefore, be dismissed. Moreover, to the extent that the intentional infliction of emotional distress claims are intertwined with the assault and battery claims, they too would have to be raised under the FTCA.

residuary three-year limitations period of D.C. Code §12-301(8) *only if* it is not intertwined with any of the causes of action for which a limitations period is specifically provided. *Lively v. Flexible Packing Ass'n*, 756 A.2d 954 (D.C. 2001). To the extent the plaintiff's emotional distress claim is based on defendant Moore's alleged sexually discriminatory conduct, it is intertwined with the assault and battery claims. Consequently, the one-year limitations period under D.C. Code 12-301(4) controls. A review of the complaint demonstrates that the emotional distress claims is based on the following conduct:

- touching of the plaintiff and her female co-workers and along with other supervisors subjected the plaintiff and her female coworkers to unnecessary physical inspections. (Comp. ¶22)

- Moore and other supervisors often brushed up against the plaintiff and her female counterparts in the elevator of their workplace. (Comp. ¶23)

- In approximately *April 2003*, after learning the plaintiff had broken off her engagement to another man, defendant Moore began directing sexual comments and behavior towards the plaintiff. (Comp. ¶25)

- In *April 2003*, defendant Moore made inappropriate comments toward her, touched her and proposition her for sex. (Comp. ¶26)

- In the *summer of 2003*, defendant Moore began regularly calling her at home after her shift and informed her he was in her neighborhood and requested that she meet him to have sex. (Comp. ¶27)

- During unspecified roll calls in *2003 and 2004*, defendant Moore and other male supervisors commented about the way the plaintiff looked in her pants. (Comp. ¶29)

- In *April 2004,* Moore sent her a picture of his genitals to her in a text message. (Comp. ¶31)

- *August 2004*, defendant Moore summoned plaintiff to his office, kissed her on the mouth; grabbed her by the waist; rubbed his genitals against her and pointing to his erection, told plaintiff that she had done that to him. (Comp. ¶32)

15

- *September 9, 2004*, defendant Moore called her from his office on her work telephone and went into great detail about a sexually explicit dream.  (Comp. ¶34)

In all of the allegations asserting a claim for emotional distress, the underlying facts which occurred in 2003, those claims are time-barred by the three-year residuary limitations period.  As to the allegations arising in August 2004, they are intertwined with an assault and battery and are covered by the assault and battery limitations period set forth on 12-301(4).  Accordingly, because the emotional distress claim was not timely brought under either limitations scheme, it is time-barred and must be dismissed.

## F.    Plaintiff's Allegations Do Not Constitute Intentional Infliction of Emotional Distress

In the same vein, the facts alleged by the plaintiff do not constitute the tort of intentional infliction of emotional distress.  To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress. *District of Columbia v. Thompson*, 570 A.2d 277, 289-90 (D.C. 1990), *vacated on other grounds*, 593 A.2d 621 (D.C.), *cert. denied*, 112 S. Ct. 380 (1991).

The dispositive issue in this case is whether defendant Moore's alleged conduct, as described by the plaintiff, was sufficiently extreme or outrageous.  Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance.  The requirement of outrageousness is not an easy one to meet. *See, e.g., Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992).

The outrageous and extreme nature of the conduct to be examined should not, however, be considered in a sterile setting, detached from the milieu in which it took place. *Id.*  Liability

does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities.

The conduct must be regarded as atrocious and utterly intolerable in a civilized society.   It has

been said that the case is generally one in which the recitation of facts to an average member of

the community would arose his resentment against the actor and lead him to exclaim,

'outrageous.'  *See e.g. Kaiser v. United States*, 761 F. Supp. 150, 156 (D.D.C. 1991).  Such

conduct "must truly be extraordinary to hold a defendant accountable" for intentional infliction of

emotional distress. *Carey v. Edgewood Mgmt. Corp.*, 754 A.2d 951, 955-56 (D.C. 2000)

In the case at bar, the allegations set forth by the plaintiff are not so extreme and

outrageous as to allow recovery for the tort.  A review of the allegations in ¶ ¶22, 23, 25, 26, 27,

29, 31, 32, and 34 are simply not the kinds of conduct which a civilized society would find

atrocious and utterly intolerable.  They are not "truly extraordinary."  Accordingly, this count

should be dismissed.

**G.     The Plaintiff Failed to Raise Her Claim Under the Federal Employees'
         Compensation Act**

The plaintiff's claim for intentional infliction of emotional distress must also be dismissed

as she failed to exhaust her remedies under the Federal Employees' Compensation Act (FECA), 5

U.S.C. §8101, et. seq.    As a result, the claim cannot be brought in this action and must be

dismissed.

FECA is a federal workers' compensation scheme designed to provide redress for work-

related injuries. The Act provides that the United States shall pay compensation as specified by

this subchapter for the disability or death of an employee resulting from personal injury sustained

while in the performance of his duty.  *See* 5 U.S.C. § 8102(a).

17

Liability under FECA is "exclusive and instead of all other liability of the United States . . . to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages." *Id.* § 8116(c).

Most importantly, the Act provides that *"[t]he Secretary of Labor shall administer, and decide all questions arising under, [FECA]."* 5 U.S.C. § 8145 (emphasis added). Further, the Act states that the action of the Secretary or his designee in allowing or denying a payment under this subchapter is -- (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise. *Id.* § 8128(b); *Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991). Thus, once an injury falls within the coverage of FECA, its remedies are exclusive and no other claims can be entertained by the court. If an injury is covered by FECA, the United States has no other liability to the employee for that injury. [5] *See also, Spinelli v. Goss*, 446 F.3d 159 (D.C. Cir. 2006); *Tippetts v. United States*, 308 F.3d 1091 (10th Cir. 2002); *DeFord v. Secretary of Labor*, 700 F.2d 281, 291 (6th Cir. 1983) ("We do not question the principle that DeFord would not be allowed to maintain a civil action under the Federal Tort Claims Act or in tort at common

---

[5] In a FECA proceeding "involving emotional conditions," where "working conditions are alleged as factors in causing the disability," the Office:

> must make findings of fact regarding which working conditions are deemed compensable factors of employment and are to be considered by a physician when providing an opinion on causal relationship. If a claimant implicates a factor of employment, the Office should then determine whether the evidence of record substantiates that factor. When the matter asserted is a compensable factor of employment and the evidence of record establishes the truth of the matter asserted, the Office must base its decision on an analysis of the medical evidence.

*Scott v. U.S. Postal Service*, 2006 WL 2787832 (D.D.C 2006).

18

law if the FECA is applicable")

Claims for intentional infliction of emotional distress present a substantial question of coverage by the FECA and, therefore, must be evaluated by the Secretary of Labor before it can be presented to the court.  Various circuit courts have also found that claims for intentional infliction of emotional distress presents a substantial question of FECA coverage. *See, e.g. Tippetts v. United States,* 308 F.3d 1091 (10th Cir. 2002); *Farley v. United States,* 162 F.3d 613, 615-16 (10th Cir. 1998)(claiming emotional distress resulting from sexual discrimination); *Swafford v. United States,* 998 F.2d 837, 838 (10th Cir. 1993) (claiming emotional distress from sexual harassment by another employee); *accord Bennett v. Barnett,* 210 F.3d 272, 274, 278 (5th Cir. 2000) (claiming emotional distress from on-the-job harassment); *McDaniel v. United States,* 970 F.2d 194, 195-97 (6th Cir. 1992) (Secretary determined that claimant's emotional injuries caused by supervisor's harassment were covered by FECA); *But see Sheehan v. United States,* 896 F.2d 1168, 1174 (9th Cir.) ("FECA compensates government employees only for physical harm."), *modified on other grounds,* 917 F.2d 424 (9th Cir. 1990).

In the instant case, plaintiff's claim arises out her employment and in the workplace. However, plaintiff has failed to submit her claim with the Secretary of Labor for adjudication. Her claim for intentional infliction of emotional distress presents a substantial question of coverage by the FECA and, therefore, must be evaluated by the Secretary of Labor before it can be presented to the court.  The only administrative claim submitted for adjudication has been the EEO allegations.  (Comp. ¶8)  If the Secretary determines that plaintiff's claim is covered by FECA, then plaintiff is barred from maintaining this matter before the Court.  As this stage however, this court must dismiss the claim as it has no jurisdiction.

19

**WHEREFORE**, Defendant Moore, in his individual capacity, prays that this Honorable

Court dismiss Counts VI, VII and VII.

Dated:  May 15, 2007
        Washington, D.C.


Respectfully submitted,


*/s/ Stephen G. DeNigris, Esq.*
Stephen G. DeNigris, Esq.
D.C. Bar No. 440697
Attorney for the Plaintiff
Suite 170-283
2100 M Street NW
Washington, DC 20037

Office: (703)416-1036
Fax:     (703)416-1037

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copy of Defendant Preston Moore, in his Individual Capacity, Motion to Dismiss and/or Motion for Summary Judgment by Electronic mail (E-mail) on the 15th day of May 2007, to the following:

David W. Sanford, Esq.
1666 Connecticut Avenue, NW
Suite 310
Washington, DC 20009
dsanford@nydclaw.com

Andrea McBarnette, Esq.
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
andrea.mcbarnette@usdoj.gov

*/s/ Stephen G. DeNigris, Esq.*

21

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

KIMBERLY PARKER,

                  Plaintiff,                  Civil Action No.:  06-CV-2169 (CKK)

        v.

HENRY PAULSON, Secretary of
the Treasury; PRESTON MOORE,
in his individual capacity,

                  Defendants.
_____/

**O R D E R**

    Upon consideration of Defendant Preston Moore, in his individual capacity, Motion to

Dismiss and/or Motion for Summary Judgment, and upon the entire record; and for other good

cause shown, it is hereby

    **ORDERED** that Defendant Moore's motion is **GRANTED / DENIED**; and it is further

    **ORDERED** that as to Count VI (Intentional Infliction of Emotional Distress), that count

is dismissed as the Court does not have subject matter jurisdiction over that claim; and it is further

    **ORDERED** that as to Counts VII (Assault) & VIII (Battery), those counts are time-

barred and dismissed with prejudice against Defendant Moore in his individual capacity; and/or

the United States is Substituted as the Defendant for those Counts.


_____
UNITED STATES DISTRICT JUDGE


Dated: _____, 2007
Washington, D.C.

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

KIMBERLY PARKER,

          Plaintiff,                    Civil Action No.:  06-CV-2169 (CKK)

     v.

HENRY PAULSON, Secretary of
the Treasury; PRESTON MOORE,
in his individual capacity,

          Defendants.
_____/

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

      Pursuant to Local Rule 7(h), Defendant, Preston Moore, in his individual capacity,

through counsel, files this Statement of Material Facts Not in Dispute in Support of His Motion

for Summary Judgment.

      1.      Plaintiff has been employed by the Department of the Treasury, Bureau of

Engraving and Printing, Washington, D.C. from February 2001 until May 24, 2005. (Comp. ¶ 11)

      2.      Beginning in approximately January 2002, Defendant Moore was plaintiff's

second-line supervisor at the Bureau of Engraving and Printing. (Comp. ¶16)

      3.      Among other duties, Defendant Moore's duties included supervising the sergeants

on the shift, overseeing the assignment of officers to shifts and posts, initiating and administering

disciplinary action and approving leave requests.   (Comp. ¶16)

      4.      Plaintiff filed her formal complaint of discrimination with the agency on October 7,

2004.  (Comp. ¶8)

      5.      Defendant Bureau of Engraving and Printing, Police Services Division, Office of

Security, hired the plaintiff as a police officer on February 12, 2001.  (Comp. ¶11)

6.      In approximately July 2001, the agency promoted plaintiff to private.  In 2003, the defendant promoted the plaintiff to Corporal.  (Comp. ¶11)

7.      Plaintiff was a salaried employee with benefits.  (Comp. ¶12)

8.      Plaintiff's claim for common-law assault and battery spans a period of January 2002, April 2003, through August 2004.  (Comp. ¶¶ 16, 25 & 32)

9.      At the time when the claims of assault and battery arose, Defendant Moore was at the agency workplace, in uniform, performing the duties of police lieutenant and the while defendant Moore was acting as the plaintiff's second-line supervisor. (Comp. ¶32)

10.     At the time when the claims of assault and battery arose, Defendant Moore was working in the District of Columbia.  (Comp. ¶3)

11.     Plaintiff has not filed a claim with Standard Form 95 under the Federal Tort Claims Act with the agency seeking damages for assault and battery from the period of February 2001 through May 24, 2005.  (Comp. ¶¶ 8 & 9)

12.     The plaintiff's claims for intentional infliction of emotional distress result from several of the claimed assaults and batteries alleged by the plaintiff.  (Comp. ¶¶ 22, 23, 25, 26, 27, and 32)

13.     The plaintiff's claims of common-law intentional infliction of emotional distress spans a period of April 2003, through September 2004.  (Comp. ¶¶ 22, 23, 25, 26, 27, 29, 31, 32, 34).

14.     Plaintiff has not filed a claim, Form CA-1, with the Secretary of the Department of Labor, Office of Workers' Compensation Program for the purpose of seeking compensation for

2

emotional distress suffered in the work place during the term of her employment from February 2001 through May 24, 2005.  (Comp. ¶¶ 8 & 9)

      15.    Plaintiff never filed a claim Form CA-1, with the Secretary of the Department of Labor, Office of Workers' Compensation Program for the purpose of seeking compensation for plaintiff began suffering from Irritable Bowel Syndrome; (Comp. ¶¶ 8, 9 & 60)

      16.    Plaintiff never filed a claim Form CA-1, with the Secretary of the Department of Labor, Office of Workers' Compensation Program for the purpose of seeking compensation for emotional injuries plaintiff began suffering from loss of appetite; (Comp. ¶¶ 8, 9 & 60)

      17.    Plaintiff never filed a claim Form CA-1, with the Secretary of the Department of Labor, Office of Workers' Compensation Program for the purpose of seeking compensation for emotional injures plaintiff began suffering from a severe panic attack; (Comp. ¶¶ 8, 9 & 60)

                         Respectfully submitted,

                         ***/s/ Stephen G. DeNigris, Esq.***
                         Stephen G. DeNigris, Esq.
                         D.C. Bar No. 440697
                         Attorney for the Plaintiff
                         Suite 170-283
                         2100 M Street NW
                         Washington, DC 20037

                         Office: (703)416-1036
                         Fax:    (703)416-1037

Dated: May 15, 2007
        Washington, D.C.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copy of Defendant Preston Moore, in his Individual Capacity, Statement of Material Facts Not in Dispute was sent by Electronic mail (E-mail) on the 15th day of May 2007, to the following:

David W. Sanford, Esq.
1666 Connecticut Avenue, NW
Suite 310
Washington, DC 20009
dsanford@nydclaw.com

Andrea McBarnette, Esq.
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
andrea.mcbarnette@usdoj.gov

*/s/ Stephen G. DeNigris, Esq.*

4